The Detroit, Springwells & Dearborn Railway Company v. George Gartner, Circuit Judge of Wayne County.

*Eminent domain—Description of premises—Appointment of commissioners.*

1. Where land is to be taken for public purposes, the description should be as definite as is necessary in a deed; citing *Mathias v. Drain Commissioner*, 49 Mich. 465; *Bennett v. Drain Commissioner*, 56 Id. 634.

2. *Mandamus* will not lie to compel the circuit court to appoint commissioners in condemnation proceedings where the petition for such appointment, and the proceedings had thereunder, do not show that the land sought to be acquired was subject to condemnation.

*Mandamus.* Argued January 3, 1893. Denied April 21, 1893.

Relator applied for *mandamus* to compel respondent to appoint commissioners under Act No. 67, Laws of 1891, providing for the condemnation of the franchise of plank or toll road companies. The facts are stated in the opinion.

*Sullivan & Mason (Brennan & Donnelly,* of counsel), for relator.

*C. A. Kent,* for respondent.

Hooker, C. J. The relator, a corporation organized

under the provisions of Act No. 148, Laws of 1855, entitled "An act to provide for the construction of train railways," filed its petition in the circuit court for the county of Wayne, praying for the appointment of commissioners, with a view to the condemnation of the franchise of the Detroit & Saline Plank-Road Company, over whose roadway the relator desired to construct its railroad for a distance of seven miles, within the townships of Springwells and Dearborn. The petition states that for its purpose the relator finds it necessary—

"To use and occupy a strip, piece, or parcel of land not exceeding 10 feet in width, except at switches, and such places not exceeding 18 feet, lying between the outer limit of the land actually occupied by the road-bed of said Detroit & Saline Plank-Road Company, and the sidewalk line as established, or liable to be established, and as shown by the map and survey herewith filed, and such crossings, switches, sidings, and connections therewith as may be essential and necessary."

The Detroit & Saline Plank-Road Company was created by special act of the Legislature (see Laws of 1848, Act No. 100, p. 110), 60 years being fixed as the period of its existence. Act No. 143, Laws of 1849, authorized said company "to enter upon and take possession of so much of the Chicago turnpike [i. e., the road in question] as lies between the city of Detroit and the village of Saline, and to proceed to construct and maintain thereon a plank road." Relator bases its claims in this proceeding upon Act No. 67, Laws of 1891, entitled "An act to provide for the purchase or condemnation of the franchise of plank or toll road companies by electric or street railroad companies." Section 1 permits a purchase of such franchise. Section 2 authorizes a condemnation of the same in case of inability to purchase, and further provides that in such cases the electric or street railroad company—

"Shall proceed as in the condemnation of lands or

franchises for railroad purposes, under chapter ninety-one of the third volume of Howell's Annotated Statutes, being chapter seventy-five of the Compiled Laws of one thousand eight hundred and seventy-one, *and all acts amendatory thereto,* so far as the same are applicable: *Provided, however,* that said street or electric railway company shall only condemn that part of the franchise of said toll or plank road company as may lie between its old, established road-bed and the side line of the street, except where it may be necessary to cross the street, or go where a toll-house may happen to be located: *Provided,* that the provisions of this act shall not be so construed as to affect the rights of abutting property-owners or the rights of the public in such highways."

Where land is to be taken for public purposes, the description should be as definite as is necessary in a deed. *Mathias v. Drain Commissioner,* 49 Mich. 465; *Bennett v. Drain Commissioner,* 56 Id. 634. The description in this petition to the circuit court was "a strip of land, not exceeding 10 feet wide, except at switches," which it did not locate. This strip was to be somewhere between the existing road-bed and existing and prospective sidewalks. It did not state which side of the existing road-bed was desired. It did not state where the strip was to begin or end. It is true that it referred to a map and survey, but these were not returned or produced at the hearing. In addition to the foregoing, it asked the condemnation of sufficient of the street for such crossings, switches, sidings, and connections as may become essential and necessary.

The importance of a perfect description is apparent. Not only is it necessary, that the commissioners and owners may know how the latter are to be affected, but it is essential for another reason. The law provides that the portion condemned must lie between the old road-bed and the side line of the street. No other portion is subject to condemnation. Until such is petitioned for, the circuit court would have no occasion to appoint commissioners. From the description in the petition as returned to us, the

court could not determine whether land subject to the condemnation was asked for or not. In addition to this, the return shows that a question of fact was raised in the proceeding, viz., whether the land as surveyed was outside .of the road-bed or not. Testimony was taken, but the record fails to show the determination of the judge. Until it appears that the land was subject to condemnation we cannot require the circuit court to appoint commissioners.

There are several important questions raised by this record, which we do not decide, preferring to leave them until they can be more fully argued than was possible upon the hearing of this motion.

The writ will be denied, with costs.

The other Justices concurred.